USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-19-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE HEISMAN TROPHY TRUST,

                      Plaintiff,

    -against-

SMACK APPAREL CO.,

                      Defendant.

08 Civ. 9153 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff The Heisman Trophy Trust ("The Heisman Trust") brought this action alleging that defendant Smack Apparel Company ("Smack Apparel") failed to comply with a settlement agreement that Smack Apparel had entered into with the predecessor to The Heisman Trust (the "Settlement Agreement"). That agreement required Smack Apparel to refrain from using marks that were "confusingly similar" to certain trademarks now owned by The Heisman Trust (the "Heisman Marks"). The Heisman Trust also alleged that Smack Apparel continued to infringe and dilute those trademarks.

By order dated January 9, 2009, the Court issued a preliminary injunction prohibiting Smack Apparel from using the Heisman Marks, or any confusingly similar marks, on or in connection with Smack Apparel's goods or services. By Decision and Order dated July 17, 2009 ("July 17 Decision and Order"), the Court granted The Heisman Trust's motion for partial summary judgment on its claim for breach of the

Settlement Agreement.[1]  The Court reserved decision on The Heisman Trust's application for attorneys' fees pursuant to the Settlement Agreement, pending further submissions from the parties.

The Court has reviewed the parties' submissions in support of and opposition to the application for attorneys' fees.  For the reasons set forth below, the application is GRANTED in part.  The Heisman Trophy trust is entitled to $498,254.70 in attorneys' fees from Smack Apparel.

## I. BACKGROUND[2]

The Heisman Trust filed the complaint in this action on October 24, 2008.  The parties engaged in limited, expedited discovery before The Heisman Trust filed an amended complaint on November 7, 2008.  At the request of The Heisman Trust, the Court entered an Order to Show Cause for Preliminary Injunction on December 8, 2008.  The Court heard oral argument on January 9, 2009 and granted The Heisman Trust's application for a preliminary injunction restraining Smack Apparel from using the Heisman Marks, or any confusingly similar marks.  By Decision and Amended Order dated January 26, 2009, the Court

---

[1] This decision and order is available at The Heisman Trophy Trust v. Smack Apparel Co., No. 08 Civ. 9153, 2009 WL 2170352 (S.D.N.Y. July 17, 2009).

[2] The Court assumes familiarity with the factual background of this case, as set forth in the July 17 Decision and Order.  Description of the factual and procedural history will be limited to those aspects relevant to the determination of a reasonable attorneys' fees award.

set forth its findings, reasoning, and conclusions in support of its decision to issue the preliminary injunction. On March 17, 2009, the Heisman Trust filed a motion for partial summary judgment on its claim for breach of the Settlement Agreement. The Court granted that motion and issued a permanent injunction by the July 17 Decision and Order. The parties entered into a stipulation on July 29, 2009 to voluntarily dismiss without prejudice the remaining claims.

The Heisman Trust now seeks an award of attorneys' fees under the Settlement Agreement, which provides for reimbursement of its "reasonable attorneys' fees and other expenses incurred." (Declaration of Robert Whalen in Support of The Heisman Trophy Trust's Application for a Preliminary Injunction ("Whalen Decl."), Ex. I at 4-5.) Smack Apparel argues that the hourly rates billed by Cleary Gottlieb Steen & Hamilton LLP ("Cleary"), the law firm retained by The Heisman Trust for all proceedings in this litigation, are excessive. Smack Apparel contends that Cleary overstaffed the case, and that Cleary seeks compensation at unreasonable hourly rates and for an excessive number of hours. Smack Apparel also argues that because Cleary recorded time spent on the matter using block-billing practices and one-quarter hour increments, the fee award should be reduced accordingly.

The Heisman Trust's original fee request was for $639,983.07. In its reply papers, The Heisman Trust has reduced its request to $586,182, "to avoid needless controversy on certain points." (Reply Memorandum in Support of Plaintiff's Application for an Award of Attorneys' Fees at 1.) The reductions reflect a ten percent discount that Cleary has given The Heisman Trust on fees billed on December 31, 2008, February 28, 2009, and August 12, 2009, "in light of the Heisman Trust's status as a non-profit organization," as well as $1,196.44 in ancillary charges for late work and conference meals that The Heisman Trust withdrew based on case law presented by Smack Apparel. (Reply Declaration of Lawrence B. Friedman in Support of Plaintiff's Application for an Award of Attorneys' Fees ("Friedman Reply Decl.") at 2.)

## II. DISCUSSION

### A. LEGAL STANDARD

When considering an application for reasonable attorneys' fees, district courts in this Circuit should focus on "setting a reasonable hourly rate, taking account of all case-specific variables," and then multiplying that rate by the number of hours worked. Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F. 3d 182, 189 (2d Cir. 2008). A district court, "in exercising its considerable discretion," should "bear in mind all of the case-specific variables that

[the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. at 190 (emphasis in original). "The reasonable hourly rate is the rate a paying client would be willing to pay." Id. When determining what a client would be willing to pay, the district court should consider the factors laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and it "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. The Johnson factors referred to by the Second Circuit in Arbor Hill are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson, 488 F.2d at 717-19). In Arbor Hill, the Second Circuit also listed the following considerations for district courts:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being

marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation

522 F.3d at 184.

B.  APPLICATION

As a threshold matter, the Court finds that The Heisman Trust and Cleary are in agreement that The Heisman Trust must pay Cleary the full amount of the attorneys' fees billed to The Heisman Trust so far (minus the ten percent non-profit discount discussed above), including the portion of the fees that The Heisman Trust has not yet paid.  The Heisman Trust has submitted a declaration by William J. Dockery ("Dockery"), President of The Heisman Trust, in which Dockery confirms that The Heisman Trust understands that it is ultimately obligated to pay the full amount reflected on the invoices from Cleary, even though Cleary has allowed The Heisman Trust to postpone payment while the Court considers the attorneys' fees application.

The Court therefore uses The Heisman Trust's request for $586,182 in attorneys' fees as a starting point for considering what amount would constitute an award of reasonable attorneys' fees.  The Court must weigh the case-

specific variables when determining the reasonable hourly rate that it will apply to the hours documented by Cleary. The Court will take the hourly rates used to calculate The Heisman Trust's request for $586,182, and adjust those rates according to the factors listed in Arbor Hill.

The hourly rates charged by Cleary were increased in 2009 from their 2008 levels. The range of hourly rates charged by the timekeepers who contributed five percent or more of the total time spent on the matter by Cleary are as follows, shown with the approximate percentage of total time in parentheses:

- $940 to $980 for partner Lawrence B. Friedman (8%)
- $555 to $580 for associate Arminda Bepko (37%)
- $325 to $350 for associate Elliot Mogul (23%)
- $225 to $235 for paralegal Garret Reeb (25%)

(See Declaration of Lawrence B. Friedman in Support of Plaintiff's Application for an Award of Attorneys' Fees ¶ 4; Friedman Reply Decl., Ex. E.) The Court will now consider whether any reductions to these rates are warranted.

1. Complexity and Difficulty of the Case

When considering the complexity and difficulty of the case, the "novelty and difficulty of the questions" raised in this action, and "the level of skill required to perform the legal service properly," Arbor Hill, 522 F.3d at 184, 187 n.3 (citing Johnson, 488 F.2d at 717), the Court finds that some

reduction in the hourly rates is appropriate. The facts of the case were not complex or difficult to ascertain; many of The Heisman Trust's exhibits consisted of screen shots of Smack Apparel's website and The Heisman Trust's website, as well as the Heisman Trust and Smack Apparel T-shirts themselves. The claims brought by The Heisman Trust revolved around the question of the likelihood of confusion between the Heisman Marks and Smack Apparel's approximations of those marks. The Court looked to the Polaroid factors on this issue. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). The Heisman Trust's arguments regarding the application of the Polaroid factors should not have required a great deal of research or factual investigation to formulate, and The Heisman Trust did not present customer surveys or other evidence that would have required extensive or time-consuming preparations to assemble.

In addition, the Court considers portions of the work Cleary performed for the summary judgment motion to be somewhat duplicative of the work performed for the preliminary injunction. Because the issues implicated at the preliminary injunction stage and the summary judgment stage were essentially the same, notwithstanding the differing legal standards, the memoranda submitted by The Heisman Trust at these two stages were quite similar. Lawyers for The Heisman

Trust spent approximately 80 hours preparing the opening and reply memoranda at the summary judgment stage, memoranda that essentially repeated the arguments presented in the preliminary injunction briefing. As the Second Circuit observed in Arbor Hill, "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," 522 F. 3d at 190, and the Court finds that a reasonable client would not have wanted to pay the legal fees associated with all of the 80 hours referred to, considering that the summary judgment motion was mostly duplicative of earlier work, and a preliminary injunction had already been granted, indicating a likelihood of success on the merits. The Court finds the 80 hours of attorney time to be excessive in light of the circumstances. Because of the relatively uncomplicated nature of the case and the excessive amount of time spent on the motion for summary judgment, the Court will reduce the applicable hourly rates by 10 percent.

    2.   Services Performed for a Non-Party

Smack Apparel points out that the legal fees sought by The Heisman Trust include legal fees for work performed on behalf of non-party Collegiate Licensing Company ("CLC"), which is The Heisman Trust's licensing agent. Smack Apparel served a third-party subpoena on CLC, and the billing records show that Cleary attorneys performed legal services related to

this subpoena. The Heisman Trust argues that it would have been obligated to reimburse CLC for these legal fees under the terms of the agency agreement between The Heisman Trust and CLC, which is why the Heisman Trust seeks to recover those fees from Smack Apparel.

The Court finds that the fees for Cleary's work on CLC discovery issues are not recoverable as reasonable attorneys' fees here. The Settlement Agreement does not specify that Smack Apparel will be responsible for such fees, and the Heisman Trust has not identified any authority to support its contention that legal fees incurred by The Heisman Trust on behalf of a third party can be considered part of The Heisman Trust's own "reasonable attorneys' fees." Nor has The Heisman Trust alleged that Smack Apparel's issuance of the third-party subpoena to CLC was in bad faith or otherwise improper. Cf. JSC Foreign Econ. Assoc. Technostroyexport v. International Dev. & Trade Servs., Inc., No. 03 Civ. 5562, 2005 WL 1958361, at *19 (S.D.N.Y. Aug. 16, 2005).

Because Cleary practices block billing, it is not possible for the Court to determine precisely how much time was spent on work related to the CLC subpoena. In its opposition brief, Smack Apparel identifies over two dozen billing entries that reflect work performed on behalf of CLC. The Court will therefore reduce the applicable hourly rates by

another five percent. See <u>Malletier v. Dooney & Bourke, Inc.</u>, No. 04 Civ. 5316, 2007 WL 1284013, at *3 (S.D.N.Y. Apr. 24, 2007) (applying percentage decrease to fee award when block billing prevented court from striking the objectionable billing entries).

C.   <u>FEE CALCULATION</u>

The Court has determined that the applicable reasonable hourly rates, given the circumstances of the litigation, should be a total of 15 percent lower than the rates that were charged by Cleary. However, Cleary has not provided a summary of the hours spent by each timekeeper at each hourly rate. Rather than multiply the revised hourly rates by the various hours charged by each timekeeper, the Court will reduce the award sought by 15 percent. The Heisman Trust may therefore recover 85 percent of the $586,182 that it seeks, which is $498,254.70.

The Court is aware that this across-the-board reduction affects the amount recoverable for ancillary expenses, such as car and taxi services, computer legal research, and duplication and printing costs. This reduction in ancillary expenses is appropriate because the case-specific circumstances discussed above apply with equal force to the ancillary expenses.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the application of plaintiff The Heisman Trophy Trust ("The Heisman Trust") for an award of attorneys' fees is GRANTED in part. Defendant Smack Apparel Corporation shall reimburse The Heisman Trust in the amount of $498,254.70.

**SO ORDERED**

Dated:  New York, New York
        16 October 2009

Victor Marrero
        U.S.D.J.